**INTERSTATE CONTRACTING CORPORATION, Appellee,**

v.

**CITY OF DALLAS, Texas, Appellant.**

No. 03–0152.

Supreme Court of Texas.

Argued April 23, 2003.

Decided April 16, 2004.

Rehearing Denied June 25, 2004.

Christina Stone, Gaughan & Stone, Houston, for Amicus Curiae ABC of Texas, Inc.

Richard Gary Thomas, Dallas, Thomas Feldman & Wilshusen, LLP, for Amicus Curiae American Subcontractors Assoc.

Steven D. Nelson, Austin, for Amicus Curiae Associated General Contractors.

John Kirby, Office of City Atty., Dallas, for appellant.

Collin L. Hayes, Richardson, William R Allensworth, Joe R. Basham, Allensworth and Porter, LLP, Austin, Retta A. Miller, Jackson & Walker, LLP, Dallas, Stephen R. Miller, Michael Metcalf, Miller Law Firm, P.C., Kansas, Mo, for appellee.

Justice JEFFERSON delivered the opinion of the court.

This case comes before us on certified questions from the United States Court of Appeals for the Fifth Circuit. Pursuant to article V, section 3–c of the Texas Constitution and Texas Rule of Appellate Procedure 58.1, we answer the following questions:

1. Does Texas recognize pass-through claims, *i.e.,* may a contractor assert a claim against an owner on a subcontractor's behalf when there is no privity of contract between the subcontractor and the owner?

   If the first question is answered in the negative, then the remaining question need not be reached. However, if the first question is answered in the affirmative, the following question must be reached:

2. What are the requirements, if any, that need to be satisfied for a contractor to assert a claim on behalf of its subcontractor when there is no privity of contract between the subcontractor and the owner, and who holds the appropriate burden of proof?

*Interstate Contracting Corp. v. City of Dallas,* 320 F.3d 539, 545 (5th Cir.2003), *certified questions accepted,* 46 Tex. Sup. Ct. J. 478 (March 6, 2003).

These are difficult issues of first impression for this Court. Privity of contract, as a necessary predicate to suit on a contract, has a long and settled history in this State.

The parties here contest the extent to which the privity requirement may be maintained in a jurisdiction that recognizes pass-through claims. We believe that contractual privity and pass-through claims are compatible. We also conclude that, although the arguments against pass-through claims are certainly not without merit, they are not sufficiently compelling to dissuade us from joining the majority of state and federal jurisdictions that have considered the issue.

We hold that Texas recognizes pass-through claims. Consequently, if the contractor is liable to the subcontractor for damages sustained by the subcontractor, pursuant to a pass-through agreement the contractor can bring an action against the owner for the subcontractor's damages. If the owner contests the contractor's pass-through suit on grounds that the contractor is not liable to the subcontractor for the claimed damages, the owner bears the burden of proof.

I

**Background[1]**

On September 14, 1994, Plaintiff City of Dallas (the "City") and Defendant Interstate Contracting Corporation ("ICC") entered into a fixed sum contract for the construction of levees around a City water treatment plant; the excavation of two areas to create storm water detention lakes; and miscellaneous work including trash removal, surveying, and linear depth checking. ICC entered into two written subcontracts with Mine Services, Inc. ("MSI") for the levee construction and the excavation of the storm water detention lake.

The material excavated for the lakes was to be used, to the extent it met specifi-

---

1. We incorporate the facts as stated by the Fifth Circuit Court of Appeals in its certification to this court. *Interstate Contracting,* 320 F.3d at 540–43; *see also* Tex.R.App. P. 58.2

cations, to construct levees. The levees were to consist of "random fill," with a PI range of 4 to 15.[2] In October 1994, MSI began by mobilizing, surveying, and dewatering the Interior Borrow Lake ("IBL"). The IBL was one of the "borrow" sites the City designated as a source of fill material. Shortly after work began, MSI discovered that the materials in the IBL differed from what it expected. The excavated material consisted primarily of low plasticity sand and other non-conforming material.

Due to the lack of suitable material, MSI was forced to manufacture fill material by mixing sand with the limited quantities of clay. The contract was silent on the issue of manufacturing fill material. Manufacturing material substantially decreased MSI's productivity and increased its costs. The parties discussed using fill from other sites that MSI believed were not designated as borrow sites under the contract. But using these sources was more expensive than the manufacturing process, and therefore, MSI persisted in manufacturing fill.

ICC informed the City of MSI's increased work on March 1, 1995. On May 30, 1995, the City indicated it would deny any claim, contending that manufacturing fill was beyond the scope of the contract. ICC subsequently sought MSI's direct costs from the City and re-notified the City of its protests. The City eventually informed ICC that its May 30th decision was its final determination. The City, through the claims process, also denied claims for costs regarding trash removal, linear depth checking, surveying, and "extended performance." MSI performed 85% of all field work, and all of the claims presented, except the trash removal, were injuries to MSI.

The original subcontract between MSI and ICC provided, in part:

In the event SUBCONTRACTOR has a claim for which the Owner may be responsible, the CONTRACTOR, in its sole discretion, may initiate with the Owner, at the SUBCONTRACTOR'S expense and which shall include attorney's fees, any dispute or claim procedures provided for in the Contract Documents for the use and benefit of SUBCONTRACTOR: otherwise SUBCONTRACTOR shall have full responsibility for the preparation of its claims and shall bear all expenses thereof, including attorney's fees.

* * *

CONTRACTOR shall be liable to SUBCONTRACTOR only to the extent of the amount, if any, actually awarded as a result of the disputes [sic] process: SUBCONTRACTOR shall be entitled only to the amount, if any, actually awarded as a result of the disputes process: and such amount when received by CONTRACTOR from the Owner shall satisfy and discharge CONTRACTOR from any and all liability to SUBCONTRACTOR for or on account of the acts or omissions of the Owner or its Architect or Engineer.

Hence, ICC was given the sole discretion to bring a claim against the City on behalf of MSI at MSI's expense. If such a suit was brought, MSI agreed to release ICC from further liability in exchange for whatever ICC recovered from the City.

ICC filed this suit on behalf of MSI against the City for breach of contract, quantum meruit, breach of implied warranty, and fraudulent inducement. Prior to the commencement of this action, on November 17, 1997, ICC and MSI entered

---

**2.** The PI, or plasticity index, is a measure of the stickiness of material. The higher the number, the greater the stickiness. Sand has low PI; clays have higher PIs.

into a detailed "Claims Presentation and Prosecution Agreement" (the "Agreement") concerning MSI's claims for significant project costs overruns due to the City's failure to disclose anticipated difficulties. The Agreement provides, in pertinent part:

II. *RECITALS*

\* \* \*

E. MSI represents that its Claim is based on the conduct of the City and that it has no other claims against Interstate except MSI's claim that is the subject of this Agreement.

\* \* \*

G. Interstate and MSI agree that it is in their mutual best interests for Interstate and MSI to pursue a claim against the City of Dallas in the name of Interstate ("the Claim"). The Claim shall consist of MSI's Claim in the estimated amount of $4,062,584.00 plus a 15% markup for profit and overhead for Interstate and Interstate's own costs claim in the amount of $222,798.18 for jobsite costs and jobsite general and administrative costs associated with extended performance caused by the City's interference with performance of the Contract ("Interstate Claim"). The parties desire, therefore, to agree upon a procedure through which they will coordinate the preparation, presentation and prosecution of the Claim against the City of Dallas.

III. *TERMS*

\* \* \*

1. MSI may pursue the Claim against the City in Interstate's name. Interstate shall cooperate fully with MSI including, but not limited to, passing on the Claim to the City and executing such documents that may be required to further the Claim; and MSI shall cooperate fully with Interstate. MSI shall have

the responsibility for the preparation of any claim, the presentation and prosecution of any such claim, and the conduct of any litigation.

\* \* \*

3. MSI shall diligently pursue the Claim. The right to abandon, settle, compromise or dismiss the Claim shall be shared by MSI and Interstate. Interstate and MSI shall each not settle the Claim without the others['] prior written approval.

4. All costs, fees and other expenses (including expert and attorney fees) incurred by MSI in connection with the preparation, prosecution and litigation of the Claim shall be paid by MSI. MSI shall have no responsibility for any attorney fees or expenses that Interstate may elect to incur.

\* \* \*

6. From any amount paid in settlement of the Claim, Interstate and MSI shall be paid first for their respective markup (including profit and overhead). If the percentage of markup actually paid as part of any settlement or judgment is specified, the markup payable shall be calculated according to the June 21, 1995 Letter of Understanding agreement. If the markup is *not* specified then the settlement amount will be presumed to include a total markup of 15% and each party shall receive one-half of the markup or 7.5%.... The remainder of the settlement funds shall be prorated and paid between Interstate and MSI in the same percentage that each party's portion of the Claim (exclusive of markup) is to the total Claim (exclusive of markup) submitted to the City .... (examples omitted)

The district court allowed ICC to bring these claims on behalf of MSI.[3] Following

---

**3.** The City attempted to join MSI, a Texas Corporation, as a party, which would have defeated diversity jurisdiction, but ICC successfully resisted MSI's joinder.

an eleven-day jury trial, the jury found that the City breached its contract with ICC. The jury also found that the City breached an implied warranty to provide accurate and suitable plans and specifications in light of subsoil conditions at the project.

On appeal, the City argued to the Fifth Circuit that the district court erred in concluding that ICC as general contractor could seek and obtain damages on behalf of its subcontractor MSI because there is a lack of privity of contract between the City and MSI. There was no privity of contract between MSI and the City; however, ICC contended that even though there was no privity between MSI and the City, the district court was correct in permitting ICC, under Texas law, to present MSI's claim on a pass-through basis.

## II

**Does Texas law recognize pass-through claims, *i.e.*, may a contractor assert a claim on behalf of its subcontractor against the owner when there is no privity of contract between the subcontractor and the owner?**

### A. The Basic Pass–Through Arrangement

A pass-through claim is a claim (1) by a party who has suffered damages (in this case, a subcontractor); (2) against a responsible party with whom it has no contract (here, the City); and (3) presented through an intervening party (the contractor) who has a contractual relationship with both. Carl A. Calvert, *Pass Through Claims and Liquidation Agreements*, CONSTRUCTION LAWYER, Oct. 18, 1998, at 29; 3 BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 8:51 (2003). Instead of one lawsuit between a subcontractor and general contractor and another between the general contractor and the owner, pass-through claims permit a contractor to pursue its subcontractor's claims directly against the owner. 3 BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 8:51.

Under the typical pass-through arrangement, the contractor remains liable to the subcontractor, but only to the extent the contractor receives payment from the owner. *Id.* A liquidation or consolidation-of-claims agreement determines the manner and procedure by which the contractor presents the subcontractor's claim to an owner. Calvert, *supra*, at 29. A liquidation agreement may be included in the subcontract or may take the form of a separate agreement, much like the agreement ICC and MSI executed in this case. *See id.* at 31–32; *see also Bovis Lend Lease LMB, Inc. v. GCT Venture, Inc.*, 285 A.D.2d 68, 728 N.Y.S.2d 25, 27 (N.Y.App. Div.2001). In a liquidation agreement: (1) the contractor acknowledges its liability to the subcontractor, thereby providing the general contractor with a basis for legal action against the owner; (2) the general contractor's liability is liquidated to the extent of its recovery against the owner; and (3) the general contractor agrees to pass its recovery to the subcontractor. *Bovis Lend Lease LMB*, 728 N.Y.S.2d at 27. Thus, under a liquidation agreement, the subcontractor releases all claims it may have against the contractor in exchange for the contractor's promise to pursue those claims against the owner and remit any recovery to the subcontractor. *See* Henry R. Kates, *Note: Facilitating Subcontractors' Claims Against the Government Through the Prime Contractor as the Real Party In Interest*, 52 GEO. WASH. L. REV. 146, 154 (1983).

### B. Pass–Through Claims in Federal Courts

In breach of contract actions against the federal government, contractors have long been permitted to present subcontractors' claims on a pass-through basis against the government, even though

the no-privity rule would otherwise bar subcontractors from recovering directly against the government. *Interstate Contracting,* 320 F.3d at 543; *see also Severin v. United States,* 99 Ct.Cl. 435, 444 (1943) (Whaley, C.J., dissenting), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944); *Mitsui & Co. v. Puerto Rico Water Res. Auth.,* 528 F.Supp. 768, 779 (D.P.R. 1981). In *United States v. Blair,* the Supreme Court articulated the policy rationale for allowing pass-through claims, stating that:

> [I]t does not follow that [the contractor] is barred from suing for this amount. [The contractor] was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of [the contractor] under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. [The contractor's] contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract.

321 U.S. 730, 737–38, 64 S.Ct. 820, 88 L.Ed. 1039 (1944) (citation omitted). The federal pass-through procedure has become the standard method by which such claims are resolved. *Owens–Corning Fiberglas Corp. v. United States,* 190 Ct.Cl. 211, 419 F.2d 439, 454–55 (1969); *Mitsui,* 528 F.Supp. at 779; *Ardsley Constr. Co. v.* *Port of N.Y. Auth.,* 61 A.D.2d 953, 403 N.Y.S.2d 43, 45 (1978).

Pass-through claims evolved because, as in Texas, federal law provides that subcontractors under government contracts do not have standing to sue the government without first establishing privity of contract. *See W.G. Yates & Sons Constr. Co. v. Caldera,* 192 F.3d 987, 990–91 (Fed.Cir.1999); *Black Lake Pipe Line Co. v. Union Constr. Co.,* 538 S.W.2d 80, 91 (Tex.1976), *overruled on other grounds by Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989); *George v. Hall,* 371 S.W.2d 874, 876 (Tex.1963). Under the federal pass-through doctrine, however, as long as the general contractor remains liable to the subcontractor for the subcontractor's damages, the general contractor can bring an action against the government for the subcontractor's damages. *W.G. Yates,* 192 F.3d at 991 (citing *Severin,* 99 Ct.Cl. at 443); *E.R. Mitchell Constr. Co. v. Danzig,* 175 F.3d 1369, 1370 (Fed.Cir.1999); *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.,* 175 F.3d 1221, 1251 (10th Cir.1999); *Blount Bros. Constr. Co. v. United States,* 171 Ct.Cl. 478, 346 F.2d 962, 965 (1965); *J.L. Simmons Co. v. United States,* 158 Ct.Cl. 393, 304 F.2d 886, 888–89 (1962); *Donovan Constr. Co. v. United States,* 138 Ct.Cl. 97, 149 F.Supp. 898, 900 (Ct.Cl.1957); *Warren Bros. Roads Co. v. United States,* 123 Ct.Cl. 48, 105 F.Supp. 826, 831 (1952). Federal courts construe this continued liability to the subcontractor as giving the contractor standing to pass the subcontractor's claims through to the government. *See, e.g., W.G. Yates,* 192 F.3d at 991.

In *Severin,* however, the United States Court of Claims[4] held that a contractor

---

4. The United States Court of Claims (now the United States Court of Federal Claims) has jurisdiction to render judgment on any claim against the United States based on any express or implied contract. 28 U.S.C. —— 1491. In 1982, Congress passed the Federal Courts Improvement Act and abolished the Court of Claims, substituting the United States Claims Court in its place. Pub.L. No. 97–164, 96 Stat. 25 (1982) The 1982 Act also created the United States Court of Appeals for

suing on behalf of its subcontractor could not recover from the government because the subcontract contained a clause that completely exculpated the contractor from liability. *See Severin,* 99 Ct.Cl. at 442–43. The court reasoned that the contractor was barred from pursuing a claim on its subcontractor's behalf because the exculpatory clause extinguished any claim the contractor could have asserted for damages resulting from the government's breach. *Id.* at 443–44. This rule has since become known as the "*Severin* doctrine."

The exculpatory clause in *Severin* provided: "The Contractor or Subcontractor shall not *in any event* be held responsible for any loss, damate [sic], detention, or delay caused by the Owner or any other Subcontractor upon the building...." *Severin,* 99 Ct.Cl. at 443 (emphasis added). The court concluded that this language constituted a complete release of the contractor's liability to the subcontractor. *Id.* However, the court noted that "[i]f plaintiffs had proved that they, in the performance of their contract with the Government became liable to their subcontractor for the damages which the latter suffered, that liability, though not yet satisfied by payment, might well constitute actual damages to plaintiffs, and sustain their suit." *Id.*

Federal courts have modified the *Severin* doctrine to mitigate the perceived unfairness in its strict application. *See, e.g., Donovan Constr. Co.,* 149 F.Supp. at 900 (holding that *Severin* and *Blair* could be reconciled only by holding that a prime contractor could recover damages on the subcontractor's behalf even if the subcontract was silent on the prime contractor's non-liability, as long as the contractor's liability was not expressly negated and

that contractor's liability could be conditioned on recovery from the owner); *see also W.G. Yates,* 192 F.3d at 990–91; *J.L. Simmons,* 304 F.2d at 888 (acknowledging *Severin* but holding that it did not bar a contractor from presenting the subcontractor's claims pursuant to a consolidation agreement, implicit in which was the parties' recognition of the contractor's continued liability to the subcontractor). In accordance with the jurisprudence that emerged after *Severin,* most pass-through arrangements still provide for the subcontractor to release the contractor from liability. However, that release is generally made contingent on the contractor bringing the subcontractor's claims to the owner and remitting to the subcontractor any amounts recovered. Such was the case in *Donovan,* the first case to hold that contingent liability was sufficient for the contractor to pass through its subcontractor's claim. *See Donovan Constr. Co.,* 149 F.Supp. at 900.

More recently, federal courts have expressly limited the *Severin* doctrine. In *E.R. Mitchell Construction Co. v. Danzig,* the Federal Circuit Court of Appeals noted that "application of the *Severin* doctrine has been narrowly construed." 175 F.3d at 1371 (quoting *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1552 & n. 8 (Fed.Cir.1983)). Another court acknowledged that "[c]ourts have strictly limited the *Severin* doctrine, out of reluctance to leave [subcontractors] with valid claims out in the cold." *Morrison Knudsen Corp.,* 175 F.3d at 1251. That court stated that as a result, post-*Severin* opinions often interpret releases and contracts generously to let contractors pursue their subcontractors' claims. *Id.* Thus, federal courts allow the contractor and subcontractor to

the Federal Circuit, which has exclusive jurisdiction over appeals from the United States Claims Court. *Id.* —— 124–127, 137. In 1992, Congress renamed the Claims Court as

the United States Court of Federal Claims. Pub.L. No. 102–572—922(b), 106 Stat. 4516 (1992).

liquidate the contractor's liability to the amount actually recovered from the owner.

In addition to narrowly reading exculpatory provisions in contracts, the Court of Claims shifted the burden of proof on this issue from the contractor to the government. See *Blount Bros. Constr. Co.*, 346 F.2d at 964–65 (holding that "to come under the '*Severin*' doctrine the *defendant* must show, through some contractual term or a release, that the plaintiff-prime is not liable to the subcontractor") (emphasis added). Federal courts have consistently adhered to this position since that time. See *W.G. Yates*, 192 F.3d at 991; *E.R.*

*Mitchell Constr.*, 175 F.3d at 1370–71; *George Hyman Constr. Co. v. United States*, 30 Fed. Cl. 170, 177 (1993), *aff'd.*, 39 F.3d 1197 (Fed.Cir.1994) (table); *Cross Constr. Co. v. United States*, 1980 WL 13189 (1980); *Southern Constr. Co. v. United States*, 176 Ct.Cl. 1339, 364 F.2d 439, 447 (1966); *Mitsui*, 528 F.Supp. at 781.

## C. Pass–Through Claims in State Courts

Following the lead of the federal courts, many states have expressly or implicitly recognized pass-through claims. Of the nineteen states that have addressed this concept in published opinions, eighteen treat pass-through claims favorably,[5] and

---

5. Alaska: *Univ. of Alaska v. Modern Constr. Inc.*, 522 P.2d 1132, 1139 n. 27 (Alaska 1974) (approving of "a substantial line of authority holding that a prime contractor may, on behalf of a subcontractor, maintain a claim due to government-caused delay").

California: *Howard Contracting, Inc. v. G.A. MacDonald Constr. Co.*, 71 Cal.App.4th 38, 83 Cal.Rptr.2d 590, 602 (1998) (holding as a matter of law that a contractor can present a subcontractor's claim on a pass-through basis even though the contractor's liability was limited to any recovery from the owner); *D.A. Parrish & Sons v. County Sanitation Dist. No. 4 of Santa Clara County*, 174 Cal.App.2d 406, 344 P.2d 883, 888 (1959) (adopting the use of pass-through claims without reference to federal decisions).

Florida: *Public Health Trust of Dade County v. M.R. Harrison Constr. Corp.*, 454 So.2d 659 (Fla.Dist.Ct.App.1984) (following *Blair*, 321 U.S. at 730, 64 S.Ct. 820 and similar federal and state decisions accepting pass-through claims).

Georgia: *Raymer v. Foster & Cooper, Inc.*, 195 Ga.App. 200, 393 S.E.2d 49, 51 (1990) (distinguishing *Department of Transp. v. Claussen Paving Co.*, 246 Ga. 807, 273 S.E.2d 161, 164 (1980), and holding that a pass-through claim was proper if the contractor agreed to pass on any recovery to the subcontractor). We note that the *Claussen* decision did not reject pass-through claims, only the federal courts' requirement that the government/owner bear the burden of disproving the contractor's continued liability to the subcontractor. *Claussen*, 273 S.E.2d at 164.

Kansas: *Roof–Techs Int'l, Inc. v. Kansas*, 30 Kan.App.2d 1184, 57 P.3d 538, *passim* (Kan. Ct.App.2002) (following New York and federal practice allowing a subcontractor to pursue pass-through claims via a liquidation agreement and applying the federal doctrine to claims against a private entity).

Louisiana: *Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 141 (5th Cir.1990) (applying Louisiana law) ("In Louisiana, although a subcontractor may not sue an owner with whom it is not in privity, the prime contractor may assert against the owner as an element of its own damages the damages of the subcontractor attributable to the owner's defective plans and specifications.").

Maryland: *Board of County Comm'rs v. Cam Constr. Co.*, 300 Md. 643, 480 A.2d 795, 797–98 (1984) (citing *Blair* and similar decisions in stating that "[i]t is clear that the concept of privity is not an absolute bar to a suit brought by a prime contractor against the owner for damages as to which a subcontractor is the real party in interest").

Massachusetts: *Old Colony Reg'l Vocational Tech. High School Dist. v. New England Constr., Inc.*, 5 Mass.App.Ct. 836, 363 N.E.2d 260, 261 (1977) (following *Blair* in concluding that the contractor could assert claims for work performed by subcontractors).

Michigan: *Kensington Corp. v. Dept. of State Highways*, 74 Mich.App. 417, 253 N.W.2d 781, 783–84 (1977) (following federal practice in determining that a subcontract did not absolve the contractor from liability to the subcontractor therefore permitting recovery by the contractor for subcontracted amounts where the state's soil specifications proved

only Connecticut explicitly rejects them.[6]

inadequate and the subcontractor incurred increased costs).

Minnesota: *St. Paul Dredging Co. v. State,* 259 Minn. 398, 107 N.W.2d 717, 724–25 (1961) (holding in accordance with federal cases that absent an exculpatory clause in the subcontract a contractor can recover for losses sustained by its subcontractor).

Missouri: *Frank Coluccio Constr. Co. v. City of Springfield,* 779 S.W.2d 550, 551–53 (Mo. 1989) (en banc) (following *Blair* and similar cases in holding that a general contractor may maintain a suit on behalf of its subcontractor even though the contractor has not confessed liability to the subcontractor).

Nevada: *Frank Briscoe Co. v. County of Clark,* 772 F.Supp. 513, 516–17 (D.Nev.1991) (applying Nevada law) (recognizing that in the United States, subcontractors' claims have long been recoverable by general contractors through representative suits).

New Jersey: *Buckley & Co. v. State,* 140 N.J.Super. 289, 356 A.2d 56, 73–4 (Law Div. 1975) (rejecting claims that contractors did not have standing to assert claims for subcontracted work and approving the use of liquidating agreements that made the subcontractor's recovery contingent on recovery by the contractor from the owner).

New York: *Bovis Lend Lease LMB,* 728 N.Y.S.2d at 27–8 (recognizing contractor's right to assert the claims of its subcontractor pursuant to a liquidating agreement); *Barry, Bette & Led Duke, Inc. v. State,* 240 A.D.2d 54, 669 N.Y.S.2d 741, 743 (N.Y.App.Div.1998) (recognizing pass-through claims based on liquidation agreements but rejecting the federal practice of allowing claims in the absence of actual contractual commitment); *Schiavone Constr. Co. v. Triborough Bridge & Tunnel Auth.,* 209 A.D.2d 598, 619 N.Y.S.2d 117, 118 (1994) (determining that a contractor could assert a claim for subcontracted work pursuant to a liquidating agreement and that the assertion of a claim by the subcontractor against the contractor is not a condition precedent to the pass-through claim).

North Carolina: *Metric Constructors, Inc. v. Hawker Siddeley Power Eng'g, Inc.,* 121 N.C.App. 530, 468 S.E.2d 435, 438–39 (1996) (distinguishing the rejection of pass-through claims in *APAC–Carolina, Inc. v. Greensboro–High Point Airport Auth.,* 110 N.C.App. 664, 431 S.E.2d 508 (1993), and holding that a subcontractor could pass through the claims of a lower tier subcontractor); *Bolton Corp. v.*

**D.  Recognizing          Pass–Through**

*T.A. Loving Co.,* 94 N.C.App. 392, 380 S.E.2d 796, 806–07 (1989) (applying the federal public contracting principles to a private contract).

Oregon: *Gilbert Pac. Corp. v. State,* 110 Or.App. 171, 822 P.2d 729, 731 (1991) (declining to decide whether to recognize pass-through claims but holding that proof of non-liability of the plaintiff is an affirmative defense and that a contractor does not have to plead or prove its liability to its subcontractor).

Rhode Island: *Cf. Board of Governors for Higher Educ. v. Infinity Constr. Serv., Inc.,* 795 A.2d 1127 (R.I.2002) (acknowledging that Rhode Island formally adopted the *Severin* doctrine in *Aetna Bridge Co. v. State Dep't of Transp.,* 795 A.2d 517 (R.I.2002), but also limiting pass-through claims to cases where the contractor can prove its liability to the subcontractor, citing both *Aetna Bridge* and *Claussen Paving,* 273 S.E.2d at 164). The Rhode Island Supreme Court also indicated that pass through claims might be limited to third-party situations where the contractor, subcontractor, and owner are all before the court. *See Infinity Constr.,* 795 A.2d at 1130. However, this limitation is not made clear in the four decisions by that court acknowledging pass-through claims.

Virginia: *Tyger Constr. Co. v. Commonwealth,* 17 Va.App. 166, 435 S.E.2d 659, 662 (1993) (following *Blair* and distinguishing an earlier decision in *Apac–Virginia, Inc. v. Virginia Dep't of Highways & Transp.,* 9 Va.App. 450, 388 S.E.2d 841 (1990) on the grounds that unlike *Apac–Virginia,* the claim in *Tyger* was brought in the contractor's name rather than the subcontractor's name).

**6.**  Connecticut: *FDIC v. Peabody, N.E., Inc.,* 239 Conn. 93, 680 A.2d 1321 (1996) (applying sovereign immunity to reject pass-through claims unless the contractor admits liability and impleads the state on claims filed by the subcontractor against the contractor); *Wexler Constr. Co. v. Housing Auth. of Norwich,* 149 Conn. 602, 183 A.2d 262 (Conn.1962) (rejecting pass-through claims on the ground that a subcontractor could recover from the owner directly under a theory of implied contract); *Walter Kidde Constructors, Inc. v. State,* 37 Conn.Supp. 50, 434 A.2d 962 (1981) (holding that liquidating agreements were not suffi-

**Claims in Texas**

We have never addressed whether pass-through claims are permissible under Texas law. In Texas, a subcontractor generally may not recover from an owner without first establishing privity of contract, but instead may recover from the contractor, who in turn can look to the owner. *Black Lake Pipe Line*, 538 S.W.2d at 87, 91; *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 38 (Tex.App.-Corpus Christi 1990), *aff'd on other grounds*, 832 S.W.2d 39 (Tex.1992). However, the U.S. Supreme Court, while acknowledging the no-privity bar in *Blair*, observed: "it does not follow that [the contractor] is barred from suing for [subcontracted work]." 321 U.S. at 737, 64 S.Ct. 820. Similarly, several Texas cases have permitted such claims without explicitly adopting the federal approach, and more recently, one court has expressly acknowledged pass-through claims as compatible with Texas law. *See Alamo Cmty. Coll. Dist. v. Browning Constr. Co.*, 131 S.W.3d 146 (Tex.App.-San Antonio 2004, pet. filed).

In *H.B. Zachry Co. v. Ceco Steel Products Corp.*, 404 S.W.2d 113, 116 (Tex.Civ. App.-Eastland 1966, writ ref'd n.r.e.), for example, the court noted that, because the two subcontractors had no contractual relationship with the government, neither could present their claims for losses directly to the government. Instead, the contractors "had the right and duty to assert the same claims for [the subcontractors] that they would have asserted for themselves had they elected to do the work done by [the subcontractors] and sustained their losses." *H.B. Zachry*, 404 S.W.2d at 116.

Similarly, in *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 686 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.), the court of appeals held that

a contractor was entitled to recover damages arising out of collateral contracts, even if the contractor had not paid for the third-party services. *See also Taylor v. Mark*, 376 S.W.2d 927, 928 (Tex.Civ.App.-Waco 1964, writ ref'd n.r.e.) (allowing a contractor to recover costs of materials without first requiring that the contractor prove that it had actually paid for the materials). The court reasoned that if the general contract contemplates collateral contracts, "recovery can be had for damages or losses resulting from collateral contracts affected by the breach of the suit contract." *Triton Oil & Gas*, 509 S.W.2d at 686 (quoting *McGuire v. Osage Oil Corp.*, 55 S.W.2d 535, 537 (Tex. Comm'n App.1932, holding approved)). The court also explained that the subcontractors on the collateral contracts are not necessary parties to the litigation because the contractor alone had the right to enforce its contract with the owner. *Id.* at 686.

Finally, in *North Harris County Junior College District v. Fleetwood Construction Co.*, 604 S.W.2d 247, 255 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.), the court of appeals rejected an owner's argument that a subcontractor could not recover damages from the owner on the sole ground that the subcontractor lacked privity with the owner. Because the contractor presented the subcontractor's claims to the owner, the court held that "[t]he argument and authorities regarding privity of contract are inapposite." *Fleetwood*, 604 S.W.2d at 255.

These cases advance the same reasoning expressed by the Supreme Court in *Blair*. A contractor should be allowed to recover costs from the owner regardless of whether the contractor performed the work itself or through a subcontractor. *See Blair*, 321 U.S. at 737–38, 64 S.Ct. 820. Otherwise, the owner could receive a windfall

cient to preserve claims for subcontracted     work).

because the subcontractor lacked privity with the owner and the contractor lacked standing to sue the owner for damages suffered by the subcontractor. Stated appropriately by one court:

> [t]he holdings [allowing claims for subcontracted work] are soundly based in reason and equity. They recognize that a direct claim by a subcontractor against [an owner] is barred by concepts of privity as well as contractual provisions such as here, and that if the contractor himself is barred from asserting those claims, the [owner] would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under its contract. No proper justification exists for such a result. Rather, the principle adopted by the cases is that the [owner] should be responsible to the contractor for costs or damages resulting from the performance or breach of the contract, whether the contractor performed the work himself or sublet it to others.

*Buckley & Co.*, 356 A.2d at 73.

In this case, ICC contends that it included the pass-through language in its subcontract and then entered into the liquidation agreement in accordance with industry practice shaped by the broad national acceptance of pass-through claims. Amici contend that pass-through claims and liquidating agreements have become standard industry practices and that failure to formally recognize such claims would "come as a surprise" to parties involved in the industry. After examining the authority from Texas and other jurisdictions, we join the majority view and recognize pass-through claims in Texas.

### E. *Pass–Through v. Assignment of Claims*

■ The City argues that pass-through claims resemble certain assignments of claims resulting in litigation between nominal adversaries that is purposely skewed to obtain a judgment against a common foe. We held in *State Farm Fire and Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996), that such assignments are invalid for two reasons. First, rather than put matters to rest, assignments of this sort spur additional and often more .caustic litigation. 925 S.W.2d at 712–13. Second, assignments of this nature distort litigation by causing parties to take positions that appear contrary to their natural interests. *Id.* We identified similar concerns when rejecting Mary Carter agreements in *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992), noting that assignments bearing these characteristics are disfavored in Texas.

What was disconcerting about assignments in those contexts is less evident in the context of pass-through claims. The pass-through claim certainly does not increase litigation and even tends to reduce it by rendering unnecessary a suit between the subcontractor and the contractor for the damages caused by the owner. Furthermore, in a pass-through situation, any settlement by the owner is a full and final settlement because the subcontractor promises to release the contractor from liability to the extent the contractor presents the subcontractor's claim and renders any recovery to the subcontractor. Pass-through claims also avoid the problem presented when one defendant settles while the other remains partially liable, necessitating an additional settlement or further litigation. These features of pass-through claims facilitate efficient litigation, unlike the assignments we invalidated in *Gandy*.

We are cognizant that pass-through claims distort litigation to a degree. For the owner to be liable to the subcontractor, the contractor must also be liable to the subcontractor. In a suit by the subcontractor against the contractor, the contractor ·would ordinarily be inclined to deny

liability. In a suit on a pass-through claim, because the contractor asserts that the owner is liable to the subcontractor, the contractor's position must be that it, too, is liable to the subcontractor. By taking a position contrary to its apparent interest, the contractor's credibility may be enhanced. In short, pass-through claims put the contractor on the side of the subcontractor and against the owner when otherwise that would often not be in the contractor's best interest. This distortion of positions is similar to the concern we raised in *Gandy*.

Nevertheless, for several reasons, we think this concern does not warrant prohibiting pass-through claims. For one thing, the contracting industry has become comfortable with pass-through claims as an efficient means of dispute resolution. As we have noted, such claims have long been allowed against the federal government and are permitted in every state that has considered the issue but one. Moreover, the allowance of pass-through claims does not make the contractor a mere pawn for the subcontractor. If the contractor disputes the merits of its subcontractor's claims, it is entitled to (1) refuse to enter into a pass-through arrangement with the subcontractor, or (2) refuse to pursue the subcontractor's claims against the owner. In the latter case, the subcontractor could assert its claims directly against the contractor as the release only applies to claims for which the owner may be responsible and that the contractor actually asserts against the owner.

Pass-through claims are also unlike Mary Carter assignments in which the assignee is at least partly responsible for the damages sought. *See Int'l Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex.1988) (concluding that "it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the

tortfeasor contributed"). With pass-through claims, the claims asserted by the contractor are not contingent on the value of claims the subcontractor may have against the contractor. Instead, the claims are presented directly to the party ultimately responsible. In this way, pass-through claims avoid the concerns inherent in Mary Carter agreements because they do not create a false impression of adversity between the contractor and subcontractor. *See Elbaor*, 845 S.W.2d at 249.

Furthermore, while a plaintiff in a Mary Carter agreement risks no increased exposure due to the settlement with the defendant, a contractor exposes itself to counterclaims by the owner and to cross-claims by potential third parties and to penalties assessed by the court. *See* Tex.R. Civ. P. 51(a); *Allison v. Arkansas La. Gas Co.*, 624 S.W.2d 566, 568 (Tex.1981). Although the contractor may elect to delegate to the subcontractor the cost of prosecuting the subcontractor's claim, the entity named in the suit is the contractor. As such, the contractor submits to the jurisdiction of the court and risks exposure to an adverse judgment. This risk may not be sufficient in itself to justify recognition of pass-through claims or to eliminate the concern that owners will be subject to more litigation by contractors who appear to have little to lose by passing through claims. But alignment with a majority of jurisdictions recognizing pass-through claims, combined with the reduction of unnecessary litigation, outweighs that concern. Accordingly, we decline to require instigation of separate litigation merely to provide the contractor standing if the contractor agrees to pursue the subcontractor's claims on a pass-through basis. *See Howard Contracting*, 83 Cal.Rptr.2d at 602.

## F. Privity and Standing

The City of Dallas also argues that privity and standing concerns bar contractors

from asserting claims on behalf of their subcontractors. The City contends that because only the person whose primary legal right has been breached may seek redress for an injury, *see Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976), ICC lacks standing as it has suffered no loss from the City's purported breach of the contract. Furthermore, the City asserts that because there is no privity between an owner and a subcontractor under Texas law, *see George v. Hall,* 371 S.W.2d at 876, a subcontractor's only legal remedy is to seek redress from the contractor who then looks to the owner. *See Black Lake Pipe Line,* 538 S.W.2d at 87, 91; *City of La-Porte v. Taylor,* 836 S.W.2d 829, 831 (Tex. App.-Houston [1st Dist.] 1992, no writ).

ICC counters that a contractor has standing to pursue the claims of its subcontractor because it remains liable to the subcontractor for the amounts recovered. *See W.G. Yates,* 192 F.3d at 991; TEX. PROP. CODE 28.002; *see also Gulf Constr. Co. v. Self,* 676 S.W.2d 624, 629–30 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.) (holding that unless there is an express contractual provision to the contrary, a contractor is ultimately responsible for payment of its subcontractors). Furthermore, ICC argues that the decisions in *Fleetwood, Triton Oil & Gas,* and *H.B. Zachry* support its contention that a contractor has standing to assert the claims of its subcontractor to an owner. *See Fleetwood,* 604 S.W.2d at 255; *Triton Oil & Gas,* 509 S.W.2d at 686; *H.B. Zachry,* 404 S.W.2d at 116. ICC also contends that the subcontractor is not suing the owner for breach of contract because it acknowledges that the subcontractor is not in privity with the owner. That non-privity bar, ICC argues, is the primary rationale for pass-through claims in the first place.

■ We believe ICC has the better argument. Rather than allowing a party to sue another with whom it has no privity,

pass-through claims recognize the continued liability of a contractor to its subcontractor. *See Self,* 676 S.W.2d at 628–30. This liability gives the contractor, who is in privity of contract with an owner, standing to assert the claims of its subcontractor. *See W.G. Yates,* 192 F.3d at 991.

In articulating this rule, we explicitly confine our rationale to construction contracts involving owners, contractors, and subcontractors. In this context, it is not potential liability but continuing liability that gives the contractor standing to sue the owner. Therefore, our recognition of pass-through claims does not run afoul of our long-held tradition of requiring privity of contract and standing for a party to maintain a suit. *See Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001); *Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.).

■ Finally, we note that our recognition of pass-through claims does not, as the City contends, affect the procedures for perfecting statutory mechanic's and materialman's liens in private contracts or for asserting claims on payment bonds in public contracts. Neither statutory scheme provides a remedy for subcontractors damaged by an owner's or a governmental entity's breach of contract with the contractor. *See* TEX. PROP. CODE §§ 53.001B.159 (mechanic's and materialman's liens), Tex. Gov't Code §§ 2253.001B.079 (payment bonds). In both instances, the contractor bears the burden of payment, and subcontractors may recover only an amount up to the subcontract price, thus precluding recovery of additional costs. Pass-through claims, on the other hand, allow subcontractors to recover from an owner when the owner's breach has caused damages that exceed the subcontract price and place the ultimate responsibility for an

owner's breach on the owner. Accordingly, pass-through claims provide protections not afforded by the lien and payment bond statutes, and our recognition of pass-through claims does not disturb the existing statutory procedures and requirements.

■ In sum, three policy justifications shape our decision that Texas recognizes pass-through claims. First, recognition of this practice, common in the construction industry, aligns Texas with federal procedure and with the majority of states that have considered this issue. Second, pass-through claims protect subcontractors against an owner's breach without undue prejudice to the owner. Finally, pass-through claims promote judicial economy by eliminating unnecessarily duplicative litigation and encouraging full settlement of claims.

Because we answer the first question in the affirmative, we proceed to the second question certified by the Fifth Circuit.

### III

**What are the requirements, if any, that need to be satisfied for a contractor to assert a claim on behalf of its subcontractor when there is no privity of contract between the subcontractor and the owner, and who holds the appropriate burden of proof?**

■ In accordance with federal practice and the practice in most states recognizing pass-through claims, we hold that Texas requires that the contractor remain liable to the subcontractor for damages sustained by the subcontractor. If the owner disputes that this requirement has been met, it bears the burden of proving, as an affirmative defense, that the pass-through arrangement negates the contractor's responsibility for the costs incurred by the subcontractor.

■ Pass-through claims are premised on a contractor's liability to its subcontractor; therefore, the contractor must have some liability upon which to base the pass-through claim. The federal courts generally hold that the contractor remains liable unless there is an unconditional release or contractual provision immunizing the prime contractor completely from any liability to the subcontractor. See, e.g., E.R. Mitchell Constr., 175 F.3d at 1371 (holding that the Severin doctrine can only bar a contractor's pass-through suit against the government if the government first asserts at trial, and then proves, that the contractor is not liable to the subcontractor for the costs in suit). The contractor's non-liability then becomes an affirmative defense upon which the owner bears the burden of proof. See id.; Blount Bros. Constr., 346 F.2d at 964–65. Accordingly, to defeat the pass-through claim on its face, an owner must prove that the contractor would not be liable to the subcontractor if it refused to present the pass-through claim or to remit the recovery to the subcontractor. Otherwise, the agreement would essentially constitute a complete release of the contractor's liability, and would give the contractor the option to sue without imposing liability for failure to do so.

■ The contractor need not reduce its liability to a binding settlement agreement, however. J.L. Simmons Co., 304 F.2d at 889–90. Conditional liability as expressed in a subcontract, liquidating agreement, or some other type of claims-presentment arrangement is sufficient to prove liability, even when the agreement provides that the contractor has no obligation to pay the subcontractor unless and until it recovers from the owner. W.G. Yates, 192 F.3d at 991; see also J.L. Simmons Co., 304 F.2d at 889–90. The owner disproves the contractor's continuing liability only if it can

show that the contractor is not obligated to remit any recovery to the subcontractor. Therefore, the contractor must remain liable to the subcontractor on its claims. We note that in Texas, a contractor is statutorily required to promptly pay its subcontractors proportionately from any amount paid by an owner attributable to work performed under a subcontract. *See* TEX. PROP. CODE 28.002. Moreover, the prompt payment requirement cannot be waived, *id.* at § 28.006; therefore, the contractor will be conditionally liable to the subcontractor for any amount recovered from the owner that is attributable to the subcontractor's work.

Because we require a party in privity to have actually suffered harm to have standing to sue, this requirement comports with our traditional notions of privity and standing. Therefore, the requirements articulated today promote judicial economy by eliminating unnecessary litigation while leaving undisturbed our privity jurisprudence.

## IV

### Sovereign Immunity

■ The City argues that, before a pass-through claim against a governmental entity can be recognized, there must be a waiver of sovereign immunity. ICC responds that, to the extent the City asserts that ICC's breach of contract claims are barred by sovereign immunity, such arguments are outside the scope of the question certified by the Fifth Circuit. ICC also argues that the City did not mention sovereign immunity in its brief filed with the Fifth Circuit, nor did the City plead sovereign immunity in its answer filed in district court.

■ Although the questions certified do not limit our answers, we decline to extend our answers in this case to the issue of sovereign immunity, which is well beyond the scope of the questions certified.

Doing so would require us to venture into the facts of this particular case and analyze the merits of the parties' claims at issue before the Fifth Circuit Court of Appeals, rather than provide answers solely as to the status of Texas law on the questions asked. For this reason, we confine our answers to the questions certified. How our answer is to be applied to the facts of this case is the province of the certifying court. *See Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793, 798 (Tex.1992).

## V

### Conclusion

For reasons of judicial economy, consistent treatment of interstate contracts, and due regard for the orderly prosecution of a subcontractor's claims arising from an owner's culpability for increased costs, we hold today that, subject to the limitations expressed herein, Texas recognizes pass-through claims by contractors on behalf of their subcontractors for an owner's breach of contract.