NUMBER 13-06-00677-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


H & H SAND AND GRAVEL, INC., Appellant,


v.
 


CITY OF CORPUS CHRISTI, Appellee.

 


On appeal from the 148th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Chief Justice Valdez


 Appellant, H&H Sand and Gravel, Inc., ("H&H Sand") brings this interlocutory appeal
from the trial court's order granting the City of Corpus Christi's plea to the jurisdiction. In
two issues, which may be properly addressed as one, H&H Sand contends that the trial
court erred in dismissing its suit for want of jurisdiction. We affirm.

I. BACKGROUND

 This is the second interlocutory appeal in this case. See City of Corpus Christi v.
H&H Sand and Gravel, Inc., No. 13-05-306-CV, 2005 Tex. App. LEXIS 10061 (Tex.
App.-Corpus Christi Dec. 1, 2005, no pet.) (mem. op., not designated for publication). The
underlying suit stems from the City's purchase of sand from Suntide Materials & Trucking
("Suntide"). According to H&H Sand's original petition, Suntide subcontracted with H&H
Sand to supply the City with sand. When Suntide fell behind on its payment to H&H Sand,
the two companies executed an alleged assignment to resolve the delayed payment
problems. The agreement, dated October 28, 1999, reads in its entirety:

Suntide Materials & Trucking will agree to have joint checks made payable
to Suntide and H&H Sand at P.O. Box 329, Odem TX, until the old balance
of $ 47,213.73 is paid on our account for the sand haul on the City of Corpus
Christi job at the Landfill.


The agreement was typed on Suntide stationery and signed by Mike Hurst, a Suntide
agent. 

 In its original petition, H&H Sand alleged that this agreement was delivered to the
City's head of purchasing on the same day it was signed. According to H&H Sand, this
served to put the City on notice that its contract with Suntide had been modified. The City,
however, continued to pay only Suntide for the sand. 

 H&H Sand sued the City, Suntide, and other parties seeking monetary damages for
breach of contract, fraud, and other causes of action. H&H Sand's claims against the City
were for breach of contract, breach of constructive trust, negligence, negligence per se,
and quantum merit. The City filed a plea to the jurisdiction in response, asserting that H&H
Sand had failed to prove the City waived its governmental immunity to be sued. The trial
court denied the City's plea, which the City appealed to this Court. We held that the
pleadings, at that point, did not assert a cause of action for which the City could be
considered to have waived its immunity. We, therefore, reversed the trial court's order
denying the City's plea to the jurisdiction. Id. at *7. We remanded the cause, however, 
so that H&H Sand could be provided an opportunity to amend its pleadings. Id. at *8.

 On remand, H&H Sand filed a second amended original petition. In its second
amended original petition, H&H Sand reasserted against the City the claims raised in its
first amended original petition and added oral and contractual novation, estoppel, "waiver,"
"waiver by acceptance of materials and benefits," and detrimental reliance. H&H Sand
asserts that these claims against the City are premised on (1) its course of dealings with
the City, and (2) a "pass-through" theory of recovery. 

 The City, on remand, filed a second plea to the jurisdiction. The second plea was
denied. The City then filed a third plea to the jurisdiction, which re-urged dismissal for want
of jurisdiction based upon several recent supreme court decisions. The trial court granted
the City's third plea to the jurisdiction. This interlocutory appeal ensued. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2006).

II. DISCUSSION

A. Standard of Review

 Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits
in which the State or certain governmental units have been sued, unless the State
consents to suit. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex.
2004). Governmental immunity operates like sovereign immunity and affords a similar
protection to political subdivisions of the State, including counties and cities. Harris County
v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004); Wichita Falls State Hosp. v. Taylor, 106
S.W.3d 692, 694 n.3 (Tex. 2003). 

 Whether a trial court has subject-matter jurisdiction is a question of law. Miranda,
133 S.W.3d at 226. We review the trial court's ruling on a plea to the jurisdiction based on
governmental immunity from suit de novo. Tex. Natural Res. Conservation Comm'n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). In performing this review, we do not look to the
merits of the case, but consider only the pleadings and the evidence relevant to the
jurisdictional inquiry. Miranda, 133 S.W.3d at 227-28.

B. Applicable Law

 In Texas, governmental immunity has two components: (1) immunity from liability,
which bars enforcement of a judgment against a governmental entity, and (2) immunity
from suit, which bars suit against the entity altogether. Tooke v. City of Mexia, 197 S.W.3d
325, 332 (Tex. 2006). By entering into a contract, a governmental entity necessarily
waives immunity from liability, voluntarily binding itself like any other party to the terms of
the agreement, but it does not waive immunity from suit. Id. Texas courts consistently
defer to the legislature to waive sovereign immunity from suit because this allows the
legislature to protect its policymaking function. Id. This is particularly true in the context
of contract claims, where "legislative control over sovereign immunity allows the legislature
to respond to changing conditions and revise existing agreements if doing so would benefit
the public." Id. (quoting IT-Davy, 74 S.W.3d at 854). To ensure that legislative control is
not lightly disturbed, a waiver of immunity must be "clear and unambiguous." Id. at 332-33. 

 Section 271.152 of the Texas Local Government Code clearly and unambiguously
waives local governments' immunity from suit for certain contractual claims and damages.
See Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). Specifically, section 271.152
provides that:

[a] local governmental entity that is authorized by statute or the constitution
to enter into a contract and that enters into a contract subject to this
subchapter waives sovereign immunity to suit for the purpose of adjudicating
a claim for breach of the contract, subject to the terms and conditions of this
subchapter.


Id. (emphasis added).

 The statute defines a "contract subject to this subchapter" as "a written contract
stating the essential terms of the agreement for providing goods or services to the local
governmental entity that is properly executed on behalf of the local governmental entity."
Id. § 271.151(2) (emphasis added). Damages are limited to "the balance due and owed
by the local governmental entity under the contract," "the amount owed for change orders
or additional work the contractor is directed to perform by a local governmental entity in
connection with the contract," and "interest as allowed by law." Id. § 271.153(a) (Vernon
2005). Damages, however, may not include "consequential damages," "exemplary
damages," or "damages for unabsorbed home office overhead." Id. § 271.153(b). 

C. Analysis

 On remand, H&H Sand's newly pleaded claims are for oral and contractual novation,
estoppel, "waiver," "waiver by acceptance of materials and benefits," and detrimental
reliance. H&H Sand's estoppel, waiver, and detrimental reliance claims sound in equity
and are not included in section 271.152's limited waiver of governmental immunity. See
Id. § 271.152; see also City of Houston v. Swinerton Builders, Inc., No. 01-06-870-CV,
2007 Tex. App. LEXIS 4835, at *19 (Tex. App.-Houston [1st Dist.] June 21, 2007, no pet.)
(providing that the plain language of the statute limits the waiver of governmental immunity
to contractual claims and lists no other claims, either in law or in equity). 

 We next consider H&H Sand's oral and contractual novation claims. H&H Sand 
argues that Section 271.152's limited waiver of governmental immunity for breach of
contract claims applies to its situation because it is a "pass-through claimant." Essentially,
H&H Sand argues that it is bringing its claims in Suntide's place and that Interstate
Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 616 (Tex. 2004), authorizes such a
suit. (1) H&H Sand's reliance on City of Dallas is misplaced because it does not meet the
requirements of a pass-through claimant and because the supreme court did not hold that
pass-through claims aborgate sovereign immunity. 

 In City of Dallas, our supreme court recognized pass-through claims in construction
suits. Id. at 616. The court defined a pass-through claim as a claim:

(1) by a party who has suffered damages . . . ; (2) against a responsible party
with whom it has no contract . . .; and (3) presented through an intervening
party . . . who has a contractual relationship with both. Carl A. Calvert, Pass
Through Claims and Liquidation Agreements, Construction Lawyer , Oct.
18, 1998, at 29; 3 Bruner and O'Connor On Construction Law § 8:51
(2003). Instead of one lawsuit between a subcontractor and general
contractor and another between the general contractor and the owner,
pass-through claims permit a contractor to pursue its subcontractor's claims
directly against the owner. 3 Bruner and O'Connor on Construction Law
§ 8:51.


Id. at 610. The court thus defined a pass-through claim in a construction suit as one
brought by the contractor on behalf of a subcontractor. Id. Moreover, the supreme court
did not decide how a pass-through claim effects sovereign immunity. Id. at 620 ("[w]e
decline to extend our answers in this case to the issue of sovereign immunity. . . ."). Thus,
City of Dallas is not controlling because H&H Sand is not the contractor in the instant case
and therefore not the proper claimant for a pass-through claim as defined by City of Dallas. 

 Finally, we consider jurisdiction based on H&H Sand's assertion that it had a
contractual relationship with the City based on its regular course of dealings. H&H Sand
argues that it became a party to the contract between the City and Suntide by way of the
purported assignment and that the City was put on notice of this modification when its
purchasing agent was presented with the purported assignment. 

 We do not see how H&H Sand's allegation of unilateral modification establishes a
waiver of governmental immunity under the statute's requirement that a contract be
"properly executed on behalf of the local governmental entity." See Tex. Loc. Gov't Code
Ann. § 271.152. H&H Sand did not pleaded that the City entered into a contract allowing
for unilateral modification by third-parties or that the City properly executed the purported
assignment. Because H&H Sand has not plead sufficient facts to invoke Section 271.152's
waiver of the City's government immunity, its sole issue is overruled.

 III. CONCLUSION

 The trial court's judgment dismissing H&H Sand's claims for want of jurisdiction is
AFFIRMED. 

 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 8th day of November, 2007. 
1. Interstate Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 616 (Tex. 2004) is an opinion by the
Texas Supreme Court that answers certified questions from the United States Court of Appeals for the Fifth
Circuit. See Tex. Const. art. V, 3-c; Tex. R. App. 58.1.