**Opinion issued October 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00415-CV

———————————

**BUNGALOW REVIVAL, LLC, Appellant**

**V.**

**JOSÉ CRUZ, JR. AND SARAH CRUZ, Appellees**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-45154**

---

## MEMORANDUM OPINION

José Cruz, Jr. and his wife Sarah Cruz sued Bungalow Revival, LLC for breach of an oral contract for home remodeling services, alleging that the work was of poor quality and required thousands of dollars in repair. Bungalow Revival counterclaimed for breach of the same contract, alleging that the Cruzes failed to

pay the final invoice—a fact which they conceded. A jury found that both the Cruzes and Bungalow Revival breached the contract, neither breach was excused, and actual damages for both parties ($75,000 for the Cruzes and $36,424.45 for Bungalow Revival). After offsetting the amount of the final invoice, the trial court entered judgment on the verdict in favor of the Cruzes for $38,575.55 in actual damages, along with pre- and post-judgment interest.

In its first two issues on appeal, Bungalow Revival argues that it was entitled to attorney's fees and prejudgment interest. In its third and final issue, it argues the evidence was legally insufficient to support the jury's finding that the Cruzes had $75,000 in actual damages.

We conclude that the evidence of the Cruzes' damages is not legally insufficient simply because the jury's reasoning is unclear, and the $75,000 damages award is within the range of evidence presented at trial. Because Bungalow Revival prevailed on its claim for breach of contract, it was entitled to attorney's fees under Chapter 38 of the Civil Practice and Remedies Code. However, because it failed to segregate its attorney's fees, we will remand this portion of the case to the trial court for a determination of the amount of fees to be awarded. Finally, we conclude that Bungalow Revival was not entitled to prejudgment interest.

We affirm the trial court's judgment except as to Bungalow Revival's claim for attorney's fees, which we remand for further proceedings.

## Background

The Cruzes were good friends with Gilbert Perez, the sole owner of Bungalow Revival. When the Cruzes decided to move to the Houston area where José grew up, they asked Perez to take on a construction project to update and customize their million-dollar new home in West University Place.[1] Perez had done this kind of project on a home the Cruzes previously owned in the Houston area. Based on this experience and their good friendship with Perez, the Cruzes entered into an oral agreement with Bungalow Revival to complete the work as requested by Sarah in exchange for the Cruzes paying "cost plus 25%."

The Cruzes were eager to move into their house, which they bought in September 2015. As the work progressed, the Cruzes and their three minor children lived in a two-bedroom apartment. Working with Sarah, Perez created design plans for the house. The Cruzes initially hoped to move into the house in January, but as the work progressed, the completion date slipped multiple times. Perez and Nick Eronko, a Bungalow Revival employee who worked closely with Perez, testified at trial that the delays were caused by numerous changes to the

---

[1] José Cruz, Jr. is a former major league baseball player, who currently coaches the Rice University men's baseball team. Due to his work, the family lived in several cities before moving back to Houston.

3

scope and design details that were requested by Sarah, as well as subcontractor availability and scheduling, material delivery, a flood in Houston, and the need to redo some of the work as issues arose. Sarah and José believed that Perez did not prioritize the work on their house and that the changes to the scope of work that Sarah requested could not account for any delays.

As the project progressed from demolition in early November 2015 through completion in July 2016, Sarah frequently communicated with Perez and Eronko, who principally handled billing. Some of the communications were light-hearted and friendly and reflected the continued good relationship among them, including sharing meals and holidays together.

In early November 2015, Eronko sent the Cruzes a conceptual budget showing the anticipated costs for material and labor, plus 25%, based on the scope of work that Bungalow Revival understood Sarah had requested. That estimate was approximately $230,000. However, José testified that he did not want to spend that much money on this project because of the large investment he had already made in the house. He and Sarah testified that they had told Perez that their budget was $140,000. According to Eronko, he sent the Cruzes requests for payment by email, attaching a spreadsheet and the supporting the invoices or emailing or hand delivering them separately. The Cruzes, however, said that they saw the spreadsheet but not the invoices.

Some problems appeared throughout the project. First, Sarah had requested that the floors be refinished because she did not like the reddish color of the Brazilian cherry wood floors that were installed by the seller not long before the Cruzes bought the home. The floors were sanded and refinished to an ebony color, but they had to be redone after the Cruzes moved into the house due to a chemical reaction that affected the appearance of the floors. The Cruzes temporarily left the house while the floors were redone. The Cruzes were concerned about dust mitigation during the flooring work because they had separately contracted for air conditioning work, and they did not want the dust from the floor work to clog the air conditioning system.

When the Cruzes finally moved in, Bungalow Revival still had to complete the punch list—a final list of small changes, corrections, or completions to be made to the house. Although the Cruzes, particularly Sarah, repeatedly indicated that they were pleased with the appearance and the quality of the work in the home, when they moved in, that changed. The primary issues of concern were the Brazilian cherry wood floors, the work in an upstairs bathroom, particularly the shower, and the air conditioning system.[2] Although Perez said the floors were in good condition when the Cruzes moved in, they underwent what he described as a

---

[2]     Sarah testified about other problems with Bungalow Revival's work, including a broken water line to an ice machine, electrical outlet problems, floor issues, and a broken toilet seat.

5

chemical reaction in the weeks just after the Cruzes moved in. Sarah also testified that she believed the floors were scratched by subcontractors performing other work. The family left the house temporarily and the floors were refinished again. Sarah testified that they stayed in a hotel for about a week, which cost $1,547.82. By the time of trial, the Cruzes had not done any other work on the floors.

The Cruzes also maintain that the upstairs shower leaked, causing damage to a downstairs ceiling. Sarah testified that she spent more than $13,000 to repair the shower and about $3,000 to repaint the ceiling. Sarah testified that sawdust from the projects done in the house got into the air ducts and clogged the air conditioner drain, necessitating emergency repair. Sarah said that in the four years after she moved into the house in the summer of 2016, she had spent about $15,000 on air conditioning repairs.

The Cruzes sued Bungalow Revival in July 2017 for breach of contract.[3] At trial, Jose, Sarah, Eronko, and Perez testified. In addition, the Cruzes presented testimony from Fred Willcox, a professional real estate inspector, and Bungalow Revival presented testimony from Thomas Cloninger, a long-time professional in construction in Houston.

---

[3] The Cruzes also sued Perez and Eronko individually, but they are not parties to this appeal. In addition to breach of contract, the Cruzes also pleaded breach of the Texas Deceptive Trade Practices Act and fraud. The Cruzes only obtained favorable jury findings on their breach of contract claim against Bungalow Revival.

Willcox testified that he inspected the house in 2018, finding problems with the work done in the upstairs bathroom. He said that the tile and grout lines were uneven, and an inspection showed water in the wall behind the tile and in the ceiling beneath the shower, all of which was caused by flawed installation. Willcox helped prepare the $9,000 estimate to repair the master bath shower stall in 2018, though he later said that he estimated it would cost $18,000 to repair the shower and retile the floor in the bathroom. He opined that Bungalow Revival's failure to contain the dust during renovation caused damage to the air conditioning unit, which would cost $5,700 to repair in 2023. He estimated that the entire project should have cost only about $120,000, rather than the roughly $285,000 that the Cruzes paid to Bungalow Revival in total.

Finally, based on 2023 estimates made shortly before trial, Willcox estimated that repair of the downstairs floors would cost approximately $200,000. That figure included $15,000 to move furniture, $54,000 for the floors, $13,000 to refinish the stairs, $25,000 for three months' rental allowance (even though he thought the work should take only one month), and $32,500 to paint the trim throughout the house.

Cloninger testified that he, too, inspected the house in 2018. He testified that he thought the house was "beautiful" and, based on its condition, he did not imagine that the family had lived there for two years since the renovations, with

the exception of the wood floors. He saw evidence of dogs, and he attributed the scratches on the floor to the dogs. He said that the built-in cabinetry was "beautiful" and met the American Wood Working Institute's certifications. As to the bathroom, he said that the tile work looked "great" with the exception of a small bit of grout in one corner that needed to be scraped away with a small razor. He testified that the plumbing fixtures were properly installed, and the connections met the plumbing code. In the attic, the HVAC ductwork was "fine," the joints were taped, and the supply and return air grilles were plumb. The condenser outside was operating normally without unusual noise or vibration, and the air conditioner chilled the home by more than 25 degrees Fahrenheit below the ambient external temperature. Overall, he called Bungalow Revival's work "above average to excellent quality."

When asked about the cost of the project, he disputed Willcox's testimony that the work could have been done for $140,000. Cloninger testified that he had been a professional estimator for 45 years, and based on his understanding of the scope of the project, it could not have been done for only $140,000. He also disputed Willcox's testimony about the cost and timeline for replacing the Brazilian cherry floors. He estimated that the work could be done in two weeks, not one month, and that the floors could be replaced for approximately $14 to $17 dollars per foot installed.

Both sides rested, and the jury returned a verdict finding that both Bungalow Revival and the Cruzes breached the agreement and that neither breach was excused. The jury found damages of $75,000 to compensate the Cruzes for the damages that resulted from Bungalow Revival's failure to comply. The jury found damages of $36,424.45 to compensate Bungalow Revival for the damages from the Cruzes' failure to comply.[4]

Bungalow Revival sought judgment notwithstanding the verdict (JNOV), arguing that there was no evidence to support the award of $75,000 to the Cruzes. Bungalow Revival also sought $177,495.03 in attorney's fees, costs exceeding $10,000, and pre- and post-judgment interest. The trial court denied the motion for JNOV, applied the jury's award in favor of Bungalow Revival as a credit, and awarded judgment in favor of the Cruzes for $38,575.55 in damages, along with $17,395.56 in prejudgment interest and post-judgment interest at the rate of 7.75%.

Bungalow Revival appealed.

## Analysis

Bungalow Revival raises three issues on appeal, asserting that: (1) the trial court erred by denying its legal fees; (2) the trial court erred by denying pre-

---

[4] The Cruzes never disputed that they had withheld the final payment for the project in an amount of $36,424.45. The only disputed question of fact was whether they were excused from complying due to Bungalow Revival's breach of the parties' agreement. The jury found that they were not excused, and the Cruzes have not challenged that finding on appeal.

judgment interest; and (3) the trial court erred by denying the motion for JNOV because there was no evidence to support the jury's award of $75,000 in damages to the Cruzes.

## I. The $75,000 damages award is supported by legally sufficient evidence.

We address Bungalow Revival's third issue first because a holding in favor of Bungalow Revival could affect our analysis of the first two issues.

### A. Standard of Review

We review a trial court's denial of a JNOV under a legal sufficiency or "no evidence" standard. *Kelsey-Seybold Med. Grp., PLLC v. Roberts*, No. 01-23-00025-CV, 2024 WL 4594833, at *4 (Tex. App.—Houston [1st Dist.] Oct. 29, 2024, pet. denied) (mem. op.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When conducting a legal sufficiency review, we "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 807; *see also Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 822.

We may sustain a no-evidence challenge when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 793 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citation omitted)).

When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). The jury, as the factfinder, is the sole judge of the witnesses' credibility and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. "It is the province of the jury to resolve conflicts in the evidence," and when reasonable jurors could resolve conflicting evidence either way, we presume they did so in accordance with the verdict. *City of Keller*, 168 S.W.3d at 820. We must defer to the jurors' determination of these matters and their resolution of conflicting evidence. *Id.*

The jury has "discretion to award damages within the range of evidence presented at trial." *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *accord Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 713 (Tex. 2016). A jury's damages award must have a rational basis; the jury may not arbitrarily award an amount that is not supported by the evidence. *Patino-Perez v. Howland*, No. 01-16-00054-CV, 2017 WL 3598241, at *4 (Tex. App.—Houston [1st Dist.] Aug. 22, 2017, no pet.) (mem. op.).

### B. Analysis

Bungalow Revival argues that the damages awarded, $75,000, does not bear a rational basis to the demonstrative exhibit used by the Cruzes to argue for damages.[5] It further argues that neither the witnesses nor the attorneys presented the jury with a range of damages to award.

The evidence in this case was highly contested as to the quality of the work performed, the extent of damages and necessity of repair, the costs to repair, and

---

[5]

who bore responsibility for the delay in completion and increase in costs of the project. Texas law is clear that it is the jury that sifts through the evidence, determines the credibility of the witnesses and the weight to assign to the evidence, and reaches a conclusion. *See City of Keller*, 168 S.W.3d at 820.

The jury found that both the Cruzes and Bungalow Revival breached the agreements, but it found that neither breach was excused. The evidence about the delay in the timeline and the changes to the scope of work, which increased the cost of the renovation, was contested. Based on the evidence presented at trial, the jury could have found that the Cruzes were responsible for the delays and increased costs such that the expenses due to delay and cost overruns were not damages from Bungalow Revival's failure to comply with the parties' agreement. In other words, the jury could have reasonably concluded that Bungalow Revival failed to comply with the parties' agreement by delivering a renovation that did not meet the Cruzes expectations but not by delivering a renovation late or for a total price that was higher than originally contemplated. Thus, the jury could have reasonably based its damages award on the costs associated with repairing the parts of the renovation that did not meet the Cruzes' expectations. At trial, the evidence centered on the Brazilian cherry wood floors, the bathroom, and the air conditioner.

In this case, the jury could have reasonably concluded that the Brazilian cherry wood floors needed repair, but it could have rejected the $199,910.69 cost estimated by Willcox, which he testified included only $54,000 for the floors themselves, with the remainder being attributed to the cost of moving furniture and renting temporary housing for $8,500 per month for three months. The jury could have considered the exhibits that were admitted at trial in conjunction with Cloninger's estimate of approximately $14 to $17 per square foot for the flooring replacement. Defense exhibit 58 included a cost breakdown from Alfred C. Schulle, Wood Floor Specialist, that estimated 2600 square feet of existing Brazilian cherry floors. The jury could have reasonably concluded that, based on Cloninger's testimony, the replacement of the existing cherry wood floor should cost somewhere between $36,400 and $44,200.

The jury could have reasonably rejected the three-month estimate of time that the Cruzes would be out of their home for the repair and instead concluded that a much shorter time frame, like the two weeks Cloninger estimated, was more appropriate. Thus, the jury could have rejected the $8,500 per month estimate for housing while the floors were installed. Instead, the jury could have estimated the cost of a two-week hotel stay based on Sarah's testimony and the hotel bill from their previous one-week hotel stay. That hotel stay cost the Cruzes $1,547.82, and the jury could have estimated that a two-week stay would cost about $3,000. The

14

jury could have credited Sarah's testimony that she paid over $13,000 to repair the shower, $3,000 to repaint the ceiling damaged by the shower leak, and $15,000 to repair the air conditioner in the four years she lived in the house.

Considering the evidence presented at trial regarding installation of new floors, costs associated with the bathroom and the prior leak, a two-week hotel stay, and repairs to the air conditioner, a reasonable range of damages would be somewhere between $70,400 and $88,000.[6] While we cannot say with certainty that this is how the jury assessed damages, we can say that there is a rational basis for the jury's award of $75,000 in damages and that this award is supported by the evidence. *See City of Keller*, 168 S.W.3d at 820; *Gulf States Utils.*, 79 S.W.3d at 566; *Patino-Perez*, 2017 WL 3598241, at *4.

We overrule this issue.

## II. Bungalow Revival is entitled to attorney's fees.

Bungalow Revival sought attorney's fees on its breach of contract claim for the unpaid final invoice for the project under Chapter 38 of the Texas Civil Practice and Remedies Code. In the trial court and on appeal, Bungalow Revival maintained that it prevailed on its cause of action against the Cruzes because the

---

[6]   The low range of the estimate is based on $36,400 for the floors, $3,000 for a hotel stay, $3,000 to repaint the ceilings damaged by the bathroom leak, $15,000 for air conditioner repairs, and $13,000 for bathroom repairs. The high range of the estimate is based on $54,000 for the floors, $3,000 for a hotel stay, $3,000 to repaint the ceilings damaged by the bathroom leak, $15,000 for air conditioner repairs, and $13,000 for bathroom repairs.

jury found in its favor and that it need not obtain a net recovery on its claim to be entitled to attorney's fees. The Cruzes argue that Bungalow Revival is not entitled to attorney's fees because they, not Bungalow Revival, prevailed on the main issue in this case and because Bungalow Revival failed to segregate its attorney's fees. The trial court denied fees to Bungalow Revival.

## A. Applicable Law

### 1. Entitlement to Attorney's Fees

In Texas, each party ordinarily pays its own attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483 (Tex. 2019). However, a prevailing party may recover attorney's fees from the opposing party, when fee-shifting is authorized by statute or contract. *Id.* at 484. When fee-shifting is authorized, the party seeking the fee award must prove that the fees are reasonable and necessary. *Id.* The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam).

When this lawsuit was filed, Chapter 38 of the Texas Civil Practice and Remedies Code provided that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and

16

costs, if the claim is for . . . an oral or written contract."[7] Act of May 17, 1985, 69th Leg., R.S., ch. 959 (amended by Act of May 28, 2021, 87th Leg., R.S., ch. 665 §1) (former TEX. CIV. PRAC. & REM. CODE § 38.001(8)). The Texas Supreme Court has repeatedly held that to recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *E.g.*, *Rohrmoos Venture*, 578 S.W.3d at 484. But the party who prevails need not obtain a net recovery because his entitlement to attorney's fees under the statute "is not dependent upon the outcome of other claims or counterclaims joined in the lawsuit." *McKinley v. Drozd*, 685 S.W.2d 7, 11 (Tex. 1985) (interpreting predecessor statute to section 38.001). Thus, the party who prevails on a claim for which attorney's fees are recoverable may obtain a judgment for those fees "even if the amount of the claim is entirely offset by an opposing party's claim." *Id.*

### 2. Segregation of Attorney's Fees

A fee claimant is, however, required to segregate fees when a lawsuit involves both claims for which attorney's fees are recoverable and claims for which attorney's fees are not recoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212

---

[7] In 2021, Section 38.001 was amended to provide that attorney's fees may be recoverable from "an individual or organization other than a quasi-governmental entity authorized to perform a function by state law, a religious organization, a charitable organization, or a charitable trust, in addition to the amount of a valid claim and costs" if the claim is for one of the eight enumerated topics, including "an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001.

S.W.3d 299, 311 (Tex. 2006). Similarly, segregation is required when a lawsuit involves multiple parties and claims. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991) ("In order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees."); *French v. Moore*, 169 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A party seeking attorney fees has a duty to segregate nonrecoverable fees from recoverable fees, and to segregate the fees owed by different parties.").

In 1991, in *Sterling*, the Texas Supreme Court noted that there existed a recognized exception to the duty to segregate attorney's fees. *Sterling*, 822 S.W.2d at 11. There the Court said that segregation of fees was not required when "causes of action involved in the suit are dependent upon the same set of facts or circumstances" and are "intertwined to the point of being inseparable." *Id.* at 11–12 (cleaned up). But fifteen years later, the Court recognized that this exception had created a flood of claims for attorney's fees based on arguments that both recoverable and unrecoverable fees were "inextricably intertwined." *Tony Gullo Motors I*, 212 S.W.3d at 312. The Court explained that the application of the exception by the courts of appeals had been inconsistent and sometimes failed to

give proper deference to the role of the factfinder in determining the amount of attorney's fees. *Id.* at 312–13.

The Supreme Court "reaffirm[ed] the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* at 313. It modified the *Sterling* exception and announced a new rule of law: "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. And, as relevant to this appeal, the Court noted that some fee disputes could be decided as a matter of law. *Id.* at 314. "For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, *res judicata*, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary." *Id.* But when "at least some of the attorney's fees are attributable only to claims for which fees are not recoverable," the fee claimant must segregate fees. *Id.* Failure to segregate attorney's fees does not preclude recovery as the issue may be remanded to the trial court. *Id.* ("Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be.").

**B.    Application to Facts**

Here, the jury found that the Cruzes breached the contract and determined that Bungalow Revival's damages were $36,424.45. Thus, Bungalow Revival prevailed on a claim based on an oral contract. That the jury's determination of the Cruzes' damages, $75,000, exceeded and completely offset that of Bungalow Revival does not alter the fact that Bungalow Revival prevailed on a cause of action. Bungalow Revival was not required to obtain a net recovery in order to obtain attorney's fees under section 38.001. *See McKinley*, 685 S.W.2d at 11.

Bungalow Revival was, however, required to segregate its fees. A review of the billing records submitted to the trial court shows that some fees were incurred in pursuit of Bungalow Revival's third-party claims. And some were incurred in conducting legal research about the Texas Deceptive Trade Practices Act. Because Bungalow Revival is not entitled to collect those attorney's fees from the Cruzes, we conclude that some attorney's fees in this case relate solely to claims for which such fees are unrecoverable, and segregation was required. *See Tony Gullo Motors I*, 212 S.W.3d at 313.

In addition, Bungalow Revival relies on language from *Tony Gullo Motors I* to argue that it is entitled to recover nearly all of the remainder of its attorney's fees because "[t]he facts and circumstances surrounding Bungalow Revival's breach of contract claim (and the Cruzes' affirmative defenses asserted thereto) were intertwined to the point of being inseparable from Bungalow Revival's

defense of the Cruzes' other claims against Bungalow Revival arising out of the same oral contract and related to the same actions taken by each party in connection with the contract." Appellant's Br. 22.

The flaw in Bungalow Revival's argument is that it relied on language from *Tony Gullo Motors I* that the court modified a few paragraphs later. *See Tony Gullo Motors I*, 212 S.W.3d at 312–14. No longer is it sufficient for a fee-seeking party to argue that the facts and circumstances are inseparably intertwined. *See id.* at 313–14. A fee-seeking party must now show that discrete legal services advance both a recoverable and unrecoverable claim. *See id.* Bungalow Revival is entitled to some amount of attorney's fees because it prevailed on its own breach of contract claim. On remand it must demonstrate that all the fees it seeks were for discrete legal services that advanced its own breach of contract claim, even if they also advanced its defense of the Cruzes' claim against Bungalow Revival.

Bungalow Revival argues on appeal that it is entitled to rendition because its evidence of attorney's fees was uncontroverted at trial. It also argues that it did segregate its fees by way of an affidavit from its attorney estimating that 10% of the attorney's fees should be allocated to work relating solely to individual defendants, Nick Eronko and Gilbert Perez. *See id*. at 314 (suggesting that testimony from attorney about percentage of work that can be attributed to recoverable fees may suffice for segregation purposes). This does not, however,

address the need to segregate fees incurred for discrete legal services that did not advance Bungalow Revival's breach of contract claim against the Cruzes, including services relating to joining third parties or researching non-contract claims, for example.

The Cruzes argue that the trial court properly denied Bungalow Revival's request for attorney's fees, however, we have already said that failure to segregate fees is not fatal to a party's claim for attorney's fees. *See id.* Because we conclude that Bungalow Revival failed to segregate attorney's fees when it was required to do so, we will remand for a determination of the amount of attorney's fees to which Bungalow Revival is entitled.

## III. The trial court did not err by denying Bungalow Revival's request for prejudgment interest.

Bungalow Revival argues that it was entitled to prejudgment interest under Section 302.002 of the Texas Finance Code, and, alternatively, under principles of equity because of the harsh effect of the lost use of money during the pendency of the litigation. The Cruzes maintain that Bungalow Revival was not a creditor and that no equitable reason exists to award prejudgment interest.

### A. Applicable Law

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*,

466 S.W.3d 143, 153 (Tex. 2015) (internal quotations omitted). Texas law provides two legal sources for prejudgment interest: (1) general principles of equity and (2) enabling statutes. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). When no statute controls, an award of prejudgment interest is governed by equitable principles, and the decision to award prejudgment interest falls within the trial court's discretion. *Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 659 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). We review the trial court's award of prejudgment interest for an abuse of discretion. *Id.*

### B.    Analysis

#### 1.    Statutory Prejudgment Interest

Section 302.002 provides:

> If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due. If an obligor has agreed to pay to a creditor any compensation that constitutes interest, the obligor is considered to have agreed on the rate produced by the amount of that interest, regardless of whether that rate is stated in the agreement."

23

TEX. FIN. CODE § 302.002.[8] The Finance Code defines "creditor" as "a person who loans money or otherwise extends credit. The term does not include a judgment creditor." TEX. FIN. CODE § 301.002(a)(3).

Bungalow Revival argues that it was a creditor because it paid all the subcontractors. However, nothing in the pleadings or the evidence established that there was a credit transaction between Bungalow Revival and the Cruzes. Instead, both the pleadings and the evidence established that there was an oral contract for Bungalow Revival to renovate the Cruzes' home and that the parties agreed that the Cruzes would pay Bungalow Revival's costs plus 25%.

Ordinarily, when a general contractor hires a subcontractor to work for an owner, the owner is not in privity of contract with the subcontractor. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 615, 618 (Tex. 2004). Instead, the owner is directly liable to the general contractor and the general contractor is liable to the subcontractor. *See id.* While the general contractor can look to the owner to recover funds owed to the subcontractor, that does not mean that the general contractor has loaned money or extended credit to the owner. *See id.*

---

[8] Section 302.002 appears in Title 4, Subtitle A, Subchapter A of the Texas Finance Code. Title 4 pertains to "Regulation of Interest, Loans, and Financed Transactions," and Subtitle A pertains to "Interest." Subchapter A pertains to "Usurious Interest."

Here, when the Cruzes hired subcontractors directly to complete specific tasks, they paid them directly. But when Bungalow Revival hired the subcontractors, the Cruzes paid Bungalow Revival the cost plus 25% in accordance with the parties' agreement. The Cruzes were not in privity with the subcontractors hired by Bungalow Revival, and thus, they did not directly owe them any payment. *See id.* Rather, Bungalow Revival was responsible for paying the subcontractors and then seeking reimbursement plus 25% from the Cruzes.

Because the agreement between Bungalow Revival and the Cruzes was not a credit transaction, we conclude that the court did not abuse its discretion by not awarding prejudgment interest under section 302.002 of the Finance Code.

### 2.      Equitable Prejudgment Interest

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins*, 962 S.W.2d at 528. "Prejudgment interest is calculated on the judgment amount, not the amount of damages awarded by the jury." *Pringle v. Moon*, 158 S.W.3d 607, 611 (Tex. App.—Fort Worth 2005, no pet.). Credits or offsets due a defendant should be deducted from the total damages awarded before prejudgment interest is calculated. *See Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-

CV, 2008 WL 3876141, at \*23 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.) (citing *Pringle*, 158 S.W.3d at 611).

Here, the jury awarded $75,000 in damages to the Cruzes, and $36,424.45 in damages to Bungalow Revival. Bungalow Revival was entitled to an offset of $36,424.45 against the $75,000 damages award before the calculation of any prejudgment interest. Because the award to Bungalow Revival was entirely offset by the Cruzes' damages, there was no amount left on which Bungalow Revival could obtain prejudgment interest. *See Tenn. Gas Pipeline Co.*, 2008 WL 3876141, at \*23; *Pringle*, 158 S.W.3d at 611.

Accordingly, we cannot conclude that the trial court abused its discretion by not awarding Bungalow Revival equitable prejudgment interest.

We overrule this issue.

## Conclusion

We affirm the trial court's judgment except as to Bungalow Revival's claim for attorney's fees, which we remand for further proceedings.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.

26